## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

JOSEPH SILVA,

      Plaintiff,

FIRST STUDENT, INC., STEELWORKERS
UNION LOCAL 8751, and VEOLIA
TRANSPORTATION, INC.,

      Defendants.

Civil Action No. 13-cv-13051-GAO

**REPORT AND RECOMMENDATION**

**CABELL, Magistrate Judge**:

### I. INTRODUCTION

The plaintiff Joseph Silva ("the plaintiff") is a bus driver and was at all relevant times a member of the defendant union, the United Steelworkers, Local 8751 ("the Union" or "the defendant"). On August 4, 2014 the plaintiff filed an amended single-count complaint alleging that the Union breached its duty to fairly represent him in connection with his attempt to grieve an employment matter.[1] (Dkt. No. 31). The defendant contends the complaint is time barred and moves for dismissal for failure to state a claim for which relief can be granted. Alternatively, the defendant argues that it has not breached its duty and is entitled to judgment on the pleadings. (Dkt. No. 35). The plaintiff opposes the motion. (Dkt. No. 41). After considering the parties' papers, as well as the arguments advanced at a hearing on April 7, 2015, it is respectfully recommended that the defendant's motion be DENIED.

---

[1] The plaintiff filed an initial complaint on November 28, 2013. (Dkt. No. 1). On August 4, 2014, the plaintiff moved to amend the complaint and attached a proposed amended complaint. (Dkt. No. 31). The Court allowed the motion but the plaintiff did not thereafter formally file the complaint and it has not been re-filed separately on the docket. Nonetheless, the parties have treated the proposed pleading as the operative complaint. Accordingly, and for purposes of clarity, the pleading being considered by the Court in connection with the defendant's motion is the plaintiff's "proposed" amended complaint found as an appendix to Docket Entry 31.

II.      **RELEVANT FACTUAL BACKGROUND**

The facts taken in the light most favorable to the plaintiff are as follows.  The plaintiff has

been a member of the Union at various times since 1985.  In 1985 the plaintiff was hired as a

school bus driver and worked under a contract managed by a company named First Student.  (Dkt.

No. 31, ¶¶ 4-5).

The plaintiff's daughter became ill in 1999.  The plaintiff applied for FMLA leave to care

for her but his application was denied.  The plaintiff subsequently left his job to care for his

daughter but he remained an active member of the Union. (Dkt. No. 31, ¶ 6).  The plaintiff

eventually attempted to return to work in 2000 but was consistently passed over for reemployment

in favor of candidates with less seniority.  He was finally rehired in 2006 but learned that he had

lost 14 years of seniority.  (Dkt. No. 31, ¶ 7).

The plaintiff contacted the Union to file a grievance on his behalf to have his seniority

reinstated.  The Union filed two grievances but they were denied, on November 9, 2010 and May

12, 2011.  Notwithstanding these denials, the past practice of both First Student and the Union was

to have people rehired with all benefits intact.  In that regard, the plaintiff understood that at least

one other union member had ceased working for First Student for a period of 10 years but was able

to be rehired with all of his seniority benefits intact. (Dkt. No. 31, ¶¶ 8-11).

Following the first denied grievance in 2010, the plaintiff began contacting Union officials

in order to have the grievance brought to arbitration under the defendant's collective bargaining

agreement.  The Union never brought the matter to arbitration, however, and failed to respond to

the plaintiff or his representative when they made inquiries regarding the status of his grievances.

The plaintiff's then attorney, Mitchell Notis ("Attorney Notis") wrote to the Union twice, via

letters dated December 10, 2012 and May 22, 2013. Attorney Notis urged the defendants to take the plaintiff's grievances to arbitration, and specifically notified them in the May 2013 letter that their failure to act would be in violation of their duty. The Union never agreed to take action in response to either letter. (Dkt. No. 31, ¶¶ 12-15).

On November 28, 2013, the plaintiff commenced the present action. The defendant thereafter produced a letter which the Union claims to have sent to Attorney Notis several months earlier, on June 24, 2013. Among other things, the letter states that the Union had decided to place the plaintiff's grievance on hold. The letter stated that the Union had previously contacted the plaintiff and asked him for additional information to support his claim. The plaintiff maintains that neither he nor Attorney Notis ever received the June 24, 2013 letter from the Union. On the contrary, the plaintiff asserts that the Union told him it was pursuing his claim through the grievance or arbitration process, but never told him that it needed additional evidence to support his claim, or did not intend to pursue his grievance, or that it was placing his grievance on hold. (Dkt. No. 31, ¶¶ 16-17).

### III.    THE APPLICABLE LAW

The defendant argues that the plaintiff's action is time barred and should be dismissed pursuant to Fed. R. Crim. P 12(b)(6). A Rule 12(b)(6) motion to dismiss challenges a party's complaint for failing to state a claim. In deciding such a motion, a court must "accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Haley v. City of Boston,* 657 F.3d 39, 46 (1st Cir. 2011) (*quoting Artuso v. Vertex Pharm, Inc.,* 637 F.3d 1, 5 (1st Cir. 2011)). In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1977 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level…on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555 (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully," and is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 556). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (*quoting Twombly,* 550 U.S. at 555). Simply, the court should assume that well-pleaded facts are genuine and then determine whether such facts state a plausible claim for relief. *Id.* at 679.

The defendant argues that it is alternatively entitled to judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). "The legal standard for evaluating a motion for judgment on the pleadings is essentially the same as the standard for evaluating a motion to dismiss under Rule 12(b)(6), except that '[a] Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole.'" *Kimmel & Silverman, P.C. v. Porro*, 969 F. Supp. 2d 46, 49 (D. Mass. 2013) (*quoting Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 54-55 (1st Cir. 2006)). Thus, similar to the standard for Rule 12(b)(6) motions, "when confronted with a motion for judgment on the pleadings, the court must 'view the facts contained in the pleadings in the light most favorable to the party opposing the motion … and draw all reasonable inferences in [that party's] favor.'" *Curran v. Cousins*, 509 F.3d 36, 43 (1st Cir. 2007). As such, dismissal is only appropriate where "the pleadings, so viewed, fail to support a 'plausible entitlement to relief.'" *Rodrigeuz-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 (1st Cir. 2007).

IV.    **DISCUSSION**

The Defendant's Rule 12(b)(6) Claim

The defendant asserts, and the Plaintiff does not dispute, that the applicable statute of limitations for bringing a claim of breach of fair representation is six months pursuant to Section 10(b) of the National Labor Relations Act ("NLRA"). The Court agrees. *See Spencer v. Local 26*, 941 F. Supp.2d 193, 196 (D. Mass. 2013) (holding that the six month statute of limitations applied to hybrid causes of action under the NLRA is equally applicable to a claimed breach of the duty of fair representation against the Union standing alone). Such a cause of action "arises when the plaintiff knows, or reasonably should know, of the acts constituting the union's alleged wrongdoing." *Graham v. Bay State Gas Co*., 779 F.2d 93, 94 (1st Cir. 1985) (*citing Metz v. Tootsie Roll Indus., Inc*., 715 F.2d 299, 304 (7th Cir. 1983)). But, a statute of limitations defense may be adjudicated on a motion to dismiss "only if the facts that establish the defense [are] definitively ascertainable from the allegations of the complaint…" *OrbusNeich Med. Co. v. Boston Sci. Corp.*, 694 F. Supp. 2d 106, 110 (D. Mass. 2010) (*quoting Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

The defendant argues that Attorney Notis's December 10, 2012 letter shows that the plaintiff knew by then that the Union had not advanced his grievances to arbitration. He argues that the six month period should therefore be deemed to run at least from that date, which means the complaint would have needed to be filed by June 10, 2013. Consequently, the complaint should be deemed untimely and dismissed for failure to state a claim. In support of this argument the defendant notes that Attorney Notis complained in the letter that the plaintiff's grievances were "getting old." The defendant also suggests that the fact that the plaintiff had hired an attorney makes it "likely" that the plaintiff believed before then that the defendant had breached its duty of

fair representation.  The defendant argues alternatively that the clock at worst began to run on May 23, 2013, when Attorney Notis indicated through his letter that the plaintiff believed the defendant may have breached its duty.  Under this scenario the complaint would have had to have been brought by November 22, 2013.  Because it was not brought until several days later, on November 28, 2013, the complaint would still be untimely.

The plaintiff counters that the Court cannot adequately assess the defendant's statute of limitations argument at this early juncture because the facts that are necessary to establish the defense are not "definitively ascertainable."  The plaintiff argues that nothing in his counsel's letters indicated the plaintiff knew or should have known that the defendant had breached its duty to him.  On the contrary, the plaintiff argues that counsel's letters reflected diligent efforts to obtain information regarding the status of the grievances and/or arbitration, and that the defendant's failure to respond was in fact designed to keep the plaintiff from learning that the defendant did not intend to pursue the plaintiff's grievances.

Taking the facts as alleged in the complaint to be true, the Court agrees that it is not possible to definitively ascertain when the plaintiff knew or should have known that the defendant breached its duty to him.  Among other things, the plaintiff specifically alleges that he "contacted several Union officials to have this matter brought to arbitration" following the denial of his grievance in 2010 and "all" of them "stated that the defendant would bring the matter to arbitration," suggesting that he reasonably could have had an ongoing sense that the Union would eventually fulfill its duty to him as a member.  (Dkt. No. 31, ¶¶ 10, 12-13).

Nothing in counsel's two letters contradicts this belief or, for that matter, evinced a clear awareness that the plaintiff definitively knew that the defendant did not in fact intend to advance his claims.  Although the letters surely reflect some worry that the defendant was not performing

as the plaintiff felt it should, they also support the plaintiff's assertion in the complaint that the purpose of the December 2012 letter was to "request[] that [the defendant] take action to pursue arbitration," and that the purpose of the May 22, 2013 letter was to notify the defendant that the matter "must be taken to arbitration pursuant to the Union's promises to [the plaintiff]," and to warn it that the defendant "*would*" be in violation of its duty *if* it did not do so. (Dkt. No. 31, ¶¶ 14-15) (emphasis added).  Indeed one fair read of the letters is that Attorney Notis initially assumed that the Union had acted to process the grievances but was becoming increasingly concerned if not skeptical about that from the defendant's official silence.  For example, Attorney Notis writes in the December 2012 letter that the plaintiff has been informed "on several occasions" that his grievances were proceeding to arbitration.  Attorney Notis asks for confirmation of that fact but does not otherwise express any serious concern.  Indeed, he goes on to ask how the contemplated proceeding will be conducted, expresses interest in attending, and raises potential scheduling concerns.  To be sure, the May 22, 2013 letter reflects more serious doubts but it still nonetheless seeks confirmation as to whether the defendant has invoked arbitration, and does not anywhere indicate that the plaintiff had concluded that the defendant did not intend to pursue the grievances on his behalf.  Against this backdrop, the defendant's lack of a response to either letter, even if not seen as intentional or designed to conceal inaction, surely contributed to the plaintiff's increasing uncertainty and if anything made it more difficult to ascertain whether or not the defendant had taken or planned to take any steps to pursue the plaintiff's grievances.  In sum, this is simply not a situation where the "allegations 'leave no doubt that an asserted claim is time-barred.'"  *See Gorelik v. Costlin,* 605 F.3d 118, 121 (1st Cir. 2010).  This claim should therefore be denied.

The Defendant's Rule 12(c) Claim

The defendant argues in the alternative that it has not breached its duty to the plaintiff because it invoked arbitration on his behalf and then placed his grievances on hold, but remains prepared to arbitrate the matter should it receive additional information it has requested from the plaintiff.  In order to make this argument, however, the defendant asserts new facts which conflict with the facts alleged in the complaint.

In particular, the defendant has appended to its reply brief an affidavit from the Union's Assistant General Counsel, Katherine Shaw.  Among other things, Shaw states in her affidavit that she sent Attorney Notis a letter dated June 24, 2013 to respond to his May 23, 2013 letter, and she appends a copy of that letter to her affidavit.  In the letter, she told Attorney Notis that the Union had asked the plaintiff in 2011 to submit any additional information he might have to support his claim that his FMLA leave application had been denied in 1999.  Shaw stated that the plaintiff had responded that he did not have any additional information.  She stated that the Union therefore had decided to place his grievances on hold, but was prepared to appeal the plaintiff's grievances to arbitration if additional evidence could be produced.  Shaw further avers in her affidavit that the Union did in fact timely submit the plaintiff's grievances to arbitration, on May 13, 2011.  As proof, she refers to yet another appended document purporting to serve as proof of submission of the plaintiff's grievances to First Student.  The words "Franz Cadet Move to arbitration" are handwritten on the document and the defendant at oral argument indicated that this notation signaled the defendant's invocation of the arbitration process.

These assertions of fact are squarely at odds with those contained in the complaint. According to the complaint, Union officials repeatedly told the plaintiff they would pursue the grievances on his behalf but failed to do so.  Moreover, according to the complaint, the plaintiff

(and Attorney Notis) never received the June 24, 2013 letter, no one from the Union ever asked the plaintiff for additional information, no one told the plaintiff the Union did not intend to pursue his grievance, no one told the plaintiff the Union was placing his grievance on hold, and no one from the Union ever timely submitted the plaintiff's claim to arbitration.

Evidence adduced through additional discovery may help to determine exactly what happened, and indeed may even provide support for the defendant's version of events, but the Court at this stage of the case must accept the facts in the complaint as true. *See Elsevier Ltd. v. Chitika, Inc.,* 826 F. Supp. 2d 398, 400 n. 1 (D. Mass. 2011) ("'Because [a motion for judgment on the pleadings] calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom to the nonmovant's behoof.'") (*quoting R.G. Fin. Corp. v. Vergara–Nunez*, 446 F.3d 178, 182 (1st Cir.2006)); *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 54 (1st Cir. 2006) ("Rule 12(c) does not allow for any resolution of contested facts; rather, a court may enter judgment on the pleadings only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment.").  The facts set out in the complaint adequately make out a claim for relief because they allege that the defendant failed to timely pursue grievances on the plaintiff's behalf and thus breached a duty of fair representation. Accordingly, the plaintiff's claim for judgment on the pleadings should be denied.

### III.    <u>CONCLUSION</u>

For the foregoing reasons, it is respectfully recommended that the Union's motion to dismiss, or in the alternative for judgment on the pleadings, be DENIED.  The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed

findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b), will preclude further appellate review of the District Court's order based on this Report and Recommendation.  *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *see also, Thomas v. Arn*, 474 U. S. 140 (1985).

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  August 19, 2015